UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | CRIMINAL ACTION |
| v. | ) ) | NO. 15-40014-TSH |
| MARK MCFORBES | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (Docket No. 56)**

**June 24, 2015**

**HILLMAN, D.J.**

Defendant Mark McForbes is charged with being a felon in possession of a firearm and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(g)(1) & 922(k). He has moved to suppress statements made to law enforcement following his arrest on the ground that they were not made pursuant to a voluntary, knowing, and intelligent waiver of his *Miranda* rights. This Court held an evidentiary hearing on the matter on June 17, 2015. For the following reasons, Defendant's Motion to Suppress Statements (Docket No. 56) is ***denied***.

**Findings of Fact**

McForbes was arrested without incident at his residence in Southbridge, Massachusetts, on the morning of January 23, 2015. During the arrest, McForbes was able to stand, walk, and speak without difficulty. While at the residence, McForbes informed ATF Special Agent Brian Meehan that he wanted to speak to someone about the charges. That message was relayed to ATF Special Agent Michael Finnerty, the case agent in charge of the investigation. Agent

1

Finnerty accompanied Agent Meehan, ATF Special Agent John Pijaca, and McForbes to the Southbridge police station. There was no substantive discussion about the charges during transport.

Upon arrival at the Southbridge police station, the agents placed McForbes in an interview room without handcuffs and gave him water. Agent Finnerty entered the room and showed McForbes his credentials. McForbes asked Agent Finnerty to display them for the camera. Also present were Agent Pijaca and Southbridge Detective Scott Bailey. All three officers identified themselves. Agent Finnerty advised McForbes that the interview was being audio and video recorded and read McForbes his *Miranda* rights. Agent Finnerty asked whether, knowing those rights, McForbes wanted to speak with him. McForbes responded that he understood and wanted to speak. Agent Finnerty gave McForbes a written waiver form to sign. McForbes confirmed that he could end the interview at any time, and then signed the form.

Early in the interview McForbes indicated that he had personal-use marijuana in his home. He couldn't remember where he kept it, stating that he was "on a lot of medications." Agent Finnerty asked what kind of medications McForbes took and McForbes answered that he was prescribed anti-depressants by Dr. Eric Garcia, but couldn't remember what kind. When asked whether the anti-depressants affect his judgment, McForbes responded "at times." Agent Finnerty next asked if McForbes took any other type of medications. McForbes stated that he was also "on Suboxone," but was unsure if he was prescribed anything else. McForbes stated that he had not consumed any alcohol or other drugs that day.

Agent Finnerty then began to discuss McForbes' charges and asked him about firearm sales. During the interview, McForbes was cogent, responsive, and spoke coherently. After approximately fifteen minutes of questioning, McForbes stated that he wanted a lawyer. Agent

Finnerty immediately terminated the interview. Before Agent Finnerty had time to get up from his seat, however, McForbes re-engaged the conversation. Agent Finnerty asked if McForbes was waiving his rights again. McForbes looked at the camera and said, "I'm waiving my rights again. Once again I'm waiving my rights and we can continue the conversation." McForbes proceeded to ask how he could help the officers get McForbes's family "away from this shit." Agent Finnerty indicated that he was looking for information for other investigations, at which point McForbes became agitated about the charges against him. Agent Pijaca told McForbes that he could either cooperate or fight the charges in court. Agent Pijaca also stated that they weren't hiding any evidence, and that "when it comes time for discovery, all that stuff will be turned over, and you'll get it all." McForbes said, "Alright let's go to discovery" and stood up, terminating the interview. The officers immediately ceased questioning related to the charges. McForbes was told to sit back down, and Agent Finnerty began asking booking questions in preparation for taking McForbes into the custody of the U.S. Marshals.[1] McForbes, still agitated, began to plead out loud to God, asking God and Jesus to "get me through this" and "get all this medication out of my body." McForbes also stated "I'm incoherent right now" and "I'm so mad right now." Once the booking questions were completed, McForbes was handcuffed and taken to the U.S. Marshals.

      Evidence of McForbes's criminal history was also presented at the suppression hearing. I credit the testimony of Detective Jeffrey Carlson of the Worcester Police Department, who arrested McForbes in 2006 following a domestic violence complaint. After reading McForbes his *Miranda* rights, Carlson asked McForbes if he understood them. McForbes responded, "I know my rights. I have been arrested a million times," and proceeded to make statements to Carlson.

---

[1] Agent Finnerty asked McForbes about allergies, medical conditions, place of birth, scars, tattoos, drug addictions, and past residences.

Finally, medical records submitted by McForbes, dated January 20, 2015, confirm that he was prescribed Suboxone by Dr. Eric Garcia, and reflect that he was doing well with the prescription at the time of his arrest.

## Discussion

### *Legal Standard*

To protect the Fifth Amendment privilege against self-incrimination, law enforcement officials must advise suspects in custody of their *Miranda* rights prior to any questioning.[2] *See Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602 (1966). "A defendant may waive his *Miranda* rights if the waiver is made voluntarily, knowingly, and intelligently." *United States v. Palmer*, 203 F.3d 55, 60 (1st Cir. 2000) (citing *Miranda v. Arizona*, 38 U.S. 436, 444, 86 S.Ct. 1602 (1966)). In examining a *Miranda* waiver, a district court must begin with the presumption that a defendant did not waive his rights. *See United States v. Downs-Moses*, 329 F.3d 253, 267 (1st Cir. 2003). That presumption is overcome where the government meets its burden of proving a valid waiver by a preponderance of the evidence. *See id.*

To be valid, a *Miranda* waiver must meet two criteria. *See United States v. Bezanson-Perkins*, 390 F.3d 34, 39 (1st Cir. 2004). First, the waiver must be voluntary. A waiver is voluntary "when 'it [is] the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986)). Second, the waiver must be knowing and intelligent. This requirement is met where the defendant waives his rights "with a full awareness of both the nature of the right being

---

[2] Specifically, a suspect in custody must be warned that he has the right to remain silent, that statements he makes may be used against him, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *See id.*

abandoned and the consequences of the decision to abandon it." *Id.* Both inquiries require courts to examine the totality of the circumstances of the interrogation. *Id.*

*Application*

I find that the government has established, by a preponderance of the evidence, that McForbes validly waived his *Miranda* rights. McForbes's primary contention is that substance use rendered his waiver involuntary. McForbes argues that the potential presence of anti-depressants, Suboxone, and marijuana in his system should have indicated to Agent Finnerty that McForbes was incapable of making a voluntary waiver, and the interview should have been terminated once McForbes explained his drug use. In determining whether a waiver is voluntary, courts look to "tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." *Palmer*, 203 F.3d at 60.

The circumstances of McForbes's interview confirm that his waiver was voluntary. To be sure, McForbes told Agent Finnerty that the anti-depressants affect his judgment "at times," and Agent Finnerty did not ask any follow-up questions regarding the effect of the anti-depressants or Suboxone. Although it may have been better practice for Agent Finnerty to more thoroughly evaluate McForbes's mental state before proceeding with the interview, the absence of follow-up questions does not sufficiently undermine the evidence of voluntariness presented by the government. McForbes had no trouble standing, walking, or talking when he was arrested, and stated right away that he wanted to speak with someone about the charges. He denied consuming alcohol or marijuana that morning. The video recording of the interview shows McForbes alert and responsive to questions. McForbes stated that he understood his rights but wanted to speak to the agents anyway. He signed a waiver form, but not before asking whether he could stop the interview at any time. His speech was clear and cogent, and he asserted himself during much of

the questioning. After terminating the interview the first time, McForbes repeated twice that he was waiving his rights again and looked at the camera to memorialize the assertion of his second waiver. Upon re-engaging the conversation, McForbes attempted to negotiate by asking how he could help the officers get his family out of trouble.

In light of this evidence, the Court does not credit McForbes's argument that certain conduct during the interview—such as pleading with God, or getting up to "go to discovery" as if it was a place—show that his judgment was altered by prescription drugs. These statements more likely evidence anxiety about the serious charges and unfamiliarity with the criminal litigation process than prescription medication. McForbes's own medical records show that just three days before his arrest, he was "doing well" on Suboxone. The records make no mention of the medication's bad side effects or otherwise describe how the drug affected his judgment. In short, even if McForbes was under the influence of anti-depressants and Suboxone during his interview, a preponderance of the evidence shows that his will was not overborne. *See United States v. Cintron*, CR No. 07-10435-NMG, 2009 WL 924423, at *3 (D. Mass. 2009) (finding *Miranda* waiver voluntary even though suspect's heroin impairment during questioning caused slurred speech, inability to stay awake, and a lack of balance and coordination).

Furthermore, there is no allegation that law enforcement coerced the *Miranda* waiver, which is fatal to McForbes' contention that the waiver was involuntary. *See Palmer*, 203 F.3d at 61-62 (observing that, "[i]n the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry") (citing *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515 (1986)); *see also United States v. Byram*, 145 F.3d 405, 407 (1st Cir. 1998) (stating that "only confessions procured by *coercive official tactics* should be excluded as involuntary") (emphasis in original). The video recording

shows that throughout the interview, Agents Finnerty and Pijaca were professional, polite, and courteous. On each occasion that McForbes stopped the interview, the agents immediately ceased questioning. There is simply no evidence that law enforcement used coercive tactics in their interactions with McForbes. As a result, I find that McForbes voluntarily waived his *Miranda* rights.

Further, McForbes's waiver was knowing and intelligent. A defendant's waiver of the Fifth Amendment privilege is knowing and intelligent where he is advised and understands that he has the right to remain silent and that any statements he makes may be used as evidence against him. *See Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851 (1987). McForbes's history with the criminal justice system shows that he is a veteran of the arrest process who is well aware of what it means to waive *Miranda*. McForbes's illiteracy does not make his waiver unknowing. *Cf. United States v. Miranda*-Santiago, 96 F.3d 517, 523 (1996) (illiterate defendant's plea was valid where district judge explained proceedings to ensure he understood nature and consequences of plea). The video recording shows that Agent Finnerty read the *Miranda* rights aloud and asked whether McForbes understood them. McForbes stated that he did, and wanted to speak anyway. Before signing the waiver form, McForbes sought reassurance that he could stop the interview at any time. He proceeded to invoke his rights by terminating the interview twice. The first time, McForbes specifically used the words "I need to speak to my lawyer," before re-engaging the conversation and expressly waiving his *Miranda* rights again. This is the conduct of an individual who understands the Fifth Amendment rights of a suspect in custody. Consequently, I find that McForbes made a knowing and intelligent waiver.

Because McForbes's *Miranda* waiver was voluntary, knowing, and intelligent, his statements to law enforcement following his arrest will not be suppressed.

## **Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress Statements (Docket No. 56) is ***denied***.


SO ORDERED.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**