UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
|  | ) | NO. 4:15-40014-TSH |
| v. | ) | |
| MARK MCFORBES, | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Docket No. 293)**

**January 12, 2021**

**HILLMAN, D.J.,**

Mark McForbes ("Mr. Forbes" or "Defendant") was convicted of two counts of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g). I sentenced him to 180 months of imprisonment followed by 3 years of supervised release. His projected release date is March 5, 2028.

I denied Mr. McForbes' first *pro se* Motion for Compassionate Release on April 22, 2020, and his subsequent *pro se* Motion for Reconsideration on June 11, 2020. (Docket Nos. 280, 284). Mr. McForbes has filed this third, more comprehensive Motion for Compassionate Release with the assistance of counsel, who asks the Court to consider the Renewed Motion *de novo* because it contains information about Mr. McForbes' underlying medical condition that was not included in his prior *pro se* motions. (Docket No. 293). The Court agrees to this request.

Mr. McForbes' Renewed Motion asks that he be released from FCI Berlin and allowed to serve the remainder of his sentence under home confinement. For the reasons below, the

Defendant's Renewed Motion is ***denied without prejudice*** to renew upon a change in circumstances at FCI Berlin, a change in his health, or as new medical information about COVID-19 and splenectomy or the extent to which he is immunocompromised becomes available.

## Discussion

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant,[1] however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, [2] if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A). Congress provided that the United States Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied a list of specific examples." 28 U.S.C. § 994(t).

Although the Commission has not released an updated policy statement addressing when compelling and extraordinary reasons exist for sentence reduction in the context of the COVID-19 pandemic, federal courts have used its most recent November 2018 policy statement as guidance. Under that guidance as it pertains to a defendant's medical condition, compelling and extraordinary circumstances exist when the defendant is suffering from a terminal illness or is: "(I)

---

[1] The Defendant must first exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).
[2] The § 3553(a) factors include: (1) the need for the sentence imposed to, among other factors, reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established by the applicable category of offense and defendant; (4) any pertinent policy statement guidelines issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar record who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Upon consideration of the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to Mr. McForbes, I find that he has not met the burden necessary to secure a compassionate release. These factors include: (1) whether the defendant suffers from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover; (2) the health, safety, and living conditions at the facility where the defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of the defendant's remaining sentence.

As a threshold issue, Mr. McForbes submitted a compassionate release request to the warden at FCI Berlin, which was denied on May 9, 2020. As he has exhausted his administrative remedies, I may reach the merits of his petition for compassionate release.

Mr. McForbes is 37 years old, appears to be in good health, and had abdominal surgery and a splenectomy in 2007. His non-BOP primary care physician informed Mr. McForbes by letter that he is "at high risk for pneumonia among other infections" because of his medical history and should practice social distancing to the extent possible. (Docket No. 298 at 18). The physician also enclosed medical information "on the risks associated with having no spleen" which notes that asplenic patients "have a small lifelong increased risk for severe or overwhelming infection."

(*Id.* at 22).  Mr. McForbes also cited a medical study published by the National Institutes of Health which found that patients who have undergone splenectomy have an increased risk of hospitalization or death from infections like pneumococcal pneumonia, septicemia, and meningitis. (Docket No. 239 at 3).  However, the study appears to focus on *bacterial* infections; COVID-19 is viral.

Mr. McForbes has served approximately 71 months of his 180-month sentence, or about 40%.  BOP records show that as of January 12, 2021 there are 0 inmate cases of COVID-19 at FCI Berlin, 5 staff cases, and 9 inmates have recovered; no media reports or evidence provided by the Defendant suggest otherwise. FEDERAL BUREAU OF PRISONS: COVID-19 CORONAVIRUS, https://www.bop.gov/coronavirus/ (last visited January 12, 2021).  According to the Defendant, social distancing is impossible due to the population density and prison layout.  Counsel for Mr. McForbes notes that his underlying offense did not involve personal violence, and the Court should not consider him a danger to the public.

Most courts who have considered whether to grant compassionate release to asplenic inmates based on the danger of the novel coronavirus have denied relief. *United States v. Holmes*, 2020 WL 7452212 at *2 (S.D.Ill. Dec. 18, 2020) (collecting cases).  Reviewing Mr. McForbes's motion and accompanying evidence, his health appears fair, and he has not alleged any lack of care which has increased his susceptibility to COVID-19.  While he may be immunocompromised, he has not demonstrated that he is severely so; his physician provided material indicating that the Defendant is at a "small" lifelong risk of severe or overwhelming infection.  No other health conditions or advanced age make him more susceptible to contract COVID-19 or more likely to experience a more severe course of illness.

COVID-19 can spread rapidly through dense populations like those concentrated in prisons and I agree with the premise that social distancing can be extremely challenging or impossible in prisons. However, FCI Berlin currently has zero reported inmate cases of COVID-19. In light of the current circumstances at his assigned BOP facility and absent more compelling evidence that his lack of a spleen substantially compromises his body's ability to fight COVID-19 if he were to contract the virus, the Defendant has not demonstrated compelling or extraordinary circumstances justifying his release from custody.

Section 3582 also requires me to consider the nature of Mr. McForbes' offense and the length of his remaining sentence. To date, he has only served about 40% of his sentence. The Government argues that he represents an ongoing danger to the community. Although his underlying offense did not involve violence against another person, Mr. McForbes demonstrated that he was willing to risk public safety for personal gain when he sold two illegal loaded guns. He did not tell the Court where and with whom he would reside during his proposed eight years of home confinement. The lack of a transition plan is troubling because he qualified for an armed career criminal enhancement for three prior drug convictions at sentencing and has committed several disciplinary infractions in BOP custody, including one physical altercation with another inmate in 2017 in which he was armed with a dangerous weapon. (Docket No. 294-2 at 2).

The Defendant's motion is ***denied without prejudice***.   Mr. McForbes may renew his motion upon a change in circumstances at FCI Berlin, a change in his health, or as new medical information about COVID-19 and splenectomy or the extent to which he is immunocompromised becomes available.

**SO ORDERED.**

*/s/ TIMOTHY S. HILLMAN*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**