## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES, <br>         Plaintiff, <br> v. <br> MARK MCFORBES, <br>         Defendant. | CRIMINAL ACTION <br> NO. 4:15-40014-TSH |

### ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Docket No. 293)

**April 26, 2021**

**HILLMAN, D.J.,**

Mark McForbes ("Mr. Forbes" or "Defendant") was convicted of two counts of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g). I sentenced him to 180 months of imprisonment followed by 3 years of supervised release. His projected release date is March 5, 2028. I denied Mr. McForbes' first *pro se* Motion for Compassionate Release on April 22, 2020; his subsequent *pro se* Motion for Reconsideration on June 11, 2020; and his third, more comprehensive Motion for Compassionate Release on January 12, 2021. (Docket Nos. 280, 284, 296).

The instant motion asks that Mr. McForbes be released from FCI Berlin and allowed to serve the remainder of his sentence under home confinement in light of new information regarding his underlying health condition and the surge in COVID-19 cases at FCI Berlin. For the reasons below, the Defendant's motion is ***denied without prejudice***.

1

**Discussion**

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant,[1] however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, [2] if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A). Congress provided that the United States Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied a list of specific examples." 28 U.S.C. § 994(t).

Although the Commission has not released an updated policy statement addressing when compelling and extraordinary reasons exist for sentence reduction in the context of the COVID-19 pandemic, federal courts have used its most recent November 2018 policy statement as guidance. Under that guidance as it pertains to a defendant's medical condition, compelling and extraordinary circumstances exist when the defendant is suffering from a terminal illness or is: "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within

---

[1] The Defendant must first exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).
[2] The § 3553(a) factors include: (1) the need for the sentence imposed to, among other factors, reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established by the applicable category of offense and defendant; (4) any pertinent policy statement guidelines issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar record who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Upon consideration of the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to Mr. McForbes, I find that he has still not met the burden necessary to secure a compassionate release. These factors include: (1) whether the defendant suffers from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover; (2) the health, safety, and living conditions at the facility where the defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of the defendant's remaining sentence.

As a threshold issue, Mr. McForbes submitted a compassionate release request to the warden at FCI Berlin, which was denied on May 9, 2020. As he has exhausted his administrative remedies, I may reach the merits of his petition for compassionate release.

Mr. McForbes is 38 years old and had a splenectomy in 2007. He has no other outstanding health issues which increase his susceptibility to contract or suffer adverse consequences from COVID-19. As I noted in my prior Order, most courts who have considered whether to grant compassionate release to asplenic inmates based on the danger presented by COVID-19 have denied relief. *See United States v. Holmes*, 2020 WL 7452212 at *2 (S.D. Ill. Dec. 18, 2020) (collecting cases); *United States v. Butler*, 2021 WL 1109109 (D.N.H. Mar. 22, 2021); *United States v. Meader*, 2021 WL 614925 (D. Me. Feb. 17, 2021); *contra United States v. Potts*, 2020 WL 55401246 (S.D. Fl. Sep. 14, 2020) (releasing 55-year-old asplenic defendant with paraplegia, HIV, incontinence, obesity, repeated respiratory infections, high blood pressure,

and high cholesterol who had served 14 years of 240 month sentence and submitted proposed release plan, but acknowledging that it was "not an easy call" given his criminal history) (Order issued before the availability of vaccines).  Mr. McForbes previously submitted medical documentation from his physicians and medical treatises showing that he was somewhat immunocompromised as the spleen is a component of the immune system, but the extent of his vulnerability compared to the general population should he contract COVID-19 was unclear. (*See* Docket No. 296 at 3-4).

      Since the prior motion, the number of active inmate COVID-19 cases at FCI Berlin has risen to 107 and Petitioner's counsel has provided new information regarding the particular risks associated with COVID-19 and asplenia.  BOP: COVID-19 CASES, available at https://www.bop.gov/coronavirus/ (last accessed Apr. 24, 2021).  On March 21, 2021, the Centers for Disease Control and Prevention issued updated guidance for healthcare practitioners which lists asplenia as a condition that poses an increased risk to patients for a severe course of COVID-19, with a hazard ratio of 1.34.  CDC, UNDERLYING MEDICAL CONDITIONS ASSOCIATED WITH HIGH RISK FOR SEVERE COVID-19: INFORMATION FOR HEALTHCARE PROVIDERS, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated on Mar. 29, 2021).  1.34 falls below the hazard ratios for many forms of cancer (.96-2.8), diabetes (1.31-1.75), stroke or dementia (2.16), reduced kidney function (1.33-2.52), and respiratory diseases other than asthma (1.63) but poses a greater risk than arthritis (1.19), asthma (.99-1.13), or hypertension (.89).  *Id.*  Furthermore, the British National Health System has announced that asplenic individuals are considered "clinically extremely vulnerable."  *See* NHS, WHO IS AT HIGH RISK FROM CORONOAVRIUS (CLINICALLY EXTREMELY VULNERABLE), available at https://bit.ly/3epM3aZ (last visited Apr. 23, 2021).

While this information provides helpful clarity, the increased risk is outweighed by the fact that Mr. McForbes received the first dose of the Moderna vaccine on April 7, 2021 and is expected to soon receive the second dose.  (BOP Medical Records, Docket No. 299-1 at 23, 30) (SEALED).  The CDC estimates that the Moderna vaccine is more than 80% effective 14 days after the first dose is administered.  CDC, INTERIM ESTIMATES OF VACCINE EFFECTIVENESS IN PREVENTION INFECTION AMONG HEALTH CARE PERSONNEL, FIRST RESPONDERS, AND OTHER ESSENTIAL AND FRONTLINE WORKERS, available at https://bit.ly/3tLXuQM  (published on Apr. 2, 2021).  As the Government notes, it is possible that a vaccine-resistant variant of COVID-19 could emerge.  But for now, the vaccine has dramatically reduced Mr. McForbes' risk of contracting COVID-19.

Section 3582 also requires me to consider the nature of Mr. McForbes' offense and the length of his remaining sentence.  To date, he has only served about 43% of his 180-month sentence and less than 50% of his sentence when accounting for his projected March 5, 2028 release date and statutory good time.  The Government has renewed its previous opposition that Mr. McForbes represents an ongoing danger to the community, and I agree.  As I previously stated, Mr. McForbes demonstrated that he was willing to risk public safety for personal gain when he sold two illegal loaded guns, and he has still not provided a proposed release plan.

Due to the considerable factors weighing against Mr. McForbes' early release and the protection against COVID-19 provided by his vaccination, the motion is ***denied without prejudice***.

**SO ORDERED.**

          /s/ TIMOTHY S. HILLMAN
          **TIMOTHY S. HILLMAN**
          **DISTRICT JUDGE**